Sara **WERNER**, Respondent,

v.

**MEDICAL PROFESSIONALS LLC**, Relator,

**Department of Employment and Economic Development,** Respondent.

No. A09–1265.

Court of Appeals of Minnesota.

June 1, 2010.

Sara V. Werner, Good Thunder, MN, pro se respondent.

Daniel R. Kelly, Richard R. Voelbel, Jessica M. Marsh, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, for relator.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by SHUMAKER, Presiding Judge; KLAPHAKE, Judge; and PETERSON, Judge.

## OPINION

SHUMAKER, Judge.

Relator challenges the decision by an unemployment law judge (ULJ) that an employee is eligible for benefits when her employer moved its office a distance of 17 miles further from her home, thereby increasing the time of her existing 170–mile round-trip commute by approximately 50 minutes and the cost by approximately $6 or $7 per day, because these unique circumstances would compel an average, reasonable worker to quit. We conclude that the employer's relocation of its office, which increased the employee's commute by 17 miles one way, does not constitute a good reason to quit caused by the employer for purposes of Minn.Stat. § 268.095, subd. 3(a).

## FACTS

Respondent-employee Sara Werner, a resident of Good Thunder, worked for relator, Medical Professionals LLC of Bloomington, from March 2005 until April 2, 2008. She traveled a round-trip distance of about 170 miles to reach her job, which took about three hours. Medical Professionals relocated its office to St. Paul, which increased Werner's daily commute by 17 miles one way, adding approximately 50 minutes to her round-trip travel time and increasing the cost of her commute by approximately $6 to $7 per day. Werner asked the employer to compensate her for the increased cost of her commute and requested that she be allowed to work from home for part of the week, but the employer was not able to grant her requests. Complaining of her increased commuting time, expense, and fatigue, Werner quit her employment.

The Minnesota Department of Employment and Economic Development (DEED), applying Minn.Stat. § 268.095, determined that Werner was ineligible for unemployment benefits because a 17–mile distance did not have a substantial negative effect on the employee and would not cause an average, reasonable worker to quit. Upon appeal and after a hearing, the ULJ concluded that Werner was eligible for unemployment benefits because her personal circumstances would compel an average, reasonable worker to quit and become unemployed rather than drive an additional 50 minutes on top of her three-hour round-trip commute and incur the additional costs of commuting. The ULJ affirmed on reconsideration. Medical Professionals now brings a certiorari appeal.

## ISSUE

Does an employee have a good reason to quit attributable to the employer if her employer moved its office, resulting in a 17–mile increase to the employee's one-way commute?

## ANALYSIS

 We may reverse or modify the ULJ's decision if it is affected by error of law. Minn.Stat. § 268.105, subd. 7(d)(4) (2008). We review questions of law de novo. *Johnson v. Walch & Walch, Inc.*, 696 N.W.2d 799, 800 (Minn.App.2005), *review denied* (Minn. July 19, 2005).

An applicant who quits her employment is ineligible for unemployment benefits except, in relevant part, when the applicant quit the employment because of a good reason caused by the employer. Minn. Stat. § 268.095, subd. 1(1).

> A good reason caused by the employer for quitting is a reason:
>
> (1) that is directly related to the employment and for which the employer is responsible;
>
> (2) that is adverse to the worker; and
>
> (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

Minn.Stat. § 268.095, subd. 3(a). If subject to adverse working conditions, the applicant must complain of these to the employer and give it reasonable opportunity to correct them before they can be considered good reason to quit. Minn.Stat. § 268.095, subd. 3(c) (2008).

The ULJ improperly considered the location of Werner's residence and her total commute when determining that she quit for good reason caused by the employer and granting unemployment benefits. Applying Minn.Stat. § 268.095, subd. 3(a), we conclude that Werner did not have a good reason caused by the employer to quit.

Consequently, we need not reach Werner's argument under subdivision 3(c).

In reaching this conclusion, we examine each of the relevant factors. First, a good reason caused by the employer is one "that is directly related to the employment and for which the employer is responsible." Minn.Stat. § 268.095, subd. 3(a)(1). "In the absence of contract or custom imposing an obligation of transportation upon the employee, transportation is usually considered the problem of the employee." *Hill v. Contract Beverages, Inc.*, 307 Minn. 356, 358, 240 N.W.2d 314, 316 (1976). While an employee may have a good personal reason for quitting, it does not necessarily constitute a good reason caused by the employer for quitting. *Kehoe v. Minn. Dep't of Econ. Sec.*, 568 N.W.2d 889, 891 (Minn.App.1997). Transportation to and from work had no direct relation to Werner's performance of her employment with Medical Professionals; the record reflects that transportation was ultimately her responsibility, not the employer's. Indeed, Werner accepted the position with Medical Professionals in spite of her substantial commuting distance, and she resided in Good Thunder for the duration of her employment. Further, the record contains no evidence of any agreement between Werner and Medical Professionals or any customary practice as to her transportation. Nothing in the record shows that Werner's personal obligation to commute to work was directly related to the employment or was the employer's responsibility for purposes of Minn.Stat. § 268.095, subd. 3(a)(1).

Next, a good reason caused by the employer must also be one that is "adverse to the worker." Minn.Stat. § 268.095, subd. 3(a)(2). The ULJ improperly considered Werner's entire commute rather than only the 17–mile, one-way increase caused by the move of the employer's office. The

ULJ concluded that the move was based on personal factors subjective to Werner, namely, the distance from her residence plus the 17–mile increase attributable to the move. Objectively, however, an increase of 17 miles in a commute is not adverse to the employee.

A good reason caused by the employer must be one "that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a)(3). To compel is "[t]o cause or bring about by force, threats, or overwhelming pressure." *Black's Law Dictionary* 321 (9th ed.2009). As the supreme court explained, "there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Dep't. of Employment Servs.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976) (quotation omitted).

The ULJ concluded that the increased time and the expense associated with a long commute compelled Werner to quit, but these are personal reasons that do not constitute "compulsion" by her employer. Rather, Werner personally created the commuting condition that contributed to the increased time and expense by choosing to reside in Good Thunder; and nothing in the record indicates Werner was compelled by "extraneous and necessitous circumstances" to quit her employment. *See id.* When an employer merely relocates its office within the Twin Cities, it does not compel an employee to quit for purposes of Minn.Stat. § 268.095, subd. 3(a)(3).

Finally, DEED asserts that the ULJ properly considered the location of Werner's residence and commute from Good Thunder, arguing that the issue is whether a reasonable employee would quit under all the circumstances unique to that particular employee. *See id.* (providing average, reasonable employee standard).

The statute does direct that the good-reason analysis be applied to the specific facts of each case. Minn.Stat. § 268.095, subd. 3(b). However, the statute also requires that the good reason attributable to the employer be one that would compel "an average, reasonable worker to quit." Minn.Stat. § 268.095, subd. 3(a)(3). "The correct standard for determining whether relator's concerns were reasonable is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive." *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 597 (Minn. App.2006) (quoting *Ferguson*, 311 Minn. at 44 n. 5, 247 N.W.2d at 900 n. 5) (quotations omitted). Thus, like the standard of the "reasonable person" in negligence and anti-discrimination laws, the standard here is an objective one. *See Olson v. Duluth Missabe & Iron Range Ry. Co.*, 213 Minn. 106, 114–15, 5 N.W.2d 492, 496–97 (1942) (holding that the standard of conduct required in a negligence action is an objective standard, which is not the conduct of the individual but that of an ordinarily prudent person); *Pribil v. Archdiocese of St. Paul & Minneapolis*, 533 N.W.2d 410, 412 (Minn.App.1995) (holding that an objective, reasonable-person standard applies in age discrimination action as to the issue of whether employee had been subjected to "intolerable conditions" resulting in constructive discharge. The distance of 17 miles is an objectively reasonable commuting distance that would not compel an average, reasonable employee to quit her employment.

Applying DEED's approach hypothetically, if an employer was located only a mile from an employee's home, allowing the employee to walk to work, and then the employer moved five miles further, the employee would have good reason to quit his job caused by the employer. This would be so because the increase in walking distance would affect the amount of

time the employee would have to spend in traveling to and from work, undoubtedly causing some fatigue, and, if the employee chose to take a taxi or a bus or to go by car, it would increase his expense.

In conclusion, an employee's problem with transportation "is usually considered the problem of the employee," in the absence of evidence to the contrary. *Hill,* 307 Minn. at 358, 240 N.W.2d at 316 (holding that employee's quit because of lack of transportation for a particular shift was not good cause to quit attributable to the employer); *see Hackenmiller v. Ye Olde Butcher Shoppe,* 415 N.W.2d 432, 434 (Minn.App.1987) (holding that employee's quit, which was caused, in relevant part, by transportation problems because the distance between her home and workplace "made travel difficult during periods of inclement weather," was not a good cause to quit attributable to the employer); *see also Preiss v. Comm'r of Econ. Sec.,* 347 N.W.2d 74, 76 (Minn.App.1984) (concluding that a position was not rendered unsuitable for applicant merely because it required her to drive 22 miles and that she thus did not show good cause for refusing suitable work). Werner's quit because the additional 17 miles added one way to her commute, along with her increased cost, was a transportation problem that is not attributable to the employer.

We hold, therefore, that Werner quit without good reason caused by the employer and is ineligible for unemployment benefits under Minn.Stat. § 268.095, subd. 1(1).

## DECISION

The ULJ erred when he concluded that Werner quit her employment for good cause attributable to the employer when the employer relocated its business, there-

by increasing Werner's travel distance one way by 17 miles.

**Reversed.**