*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1572**

Tamara S. Jamnick,
Relator,

vs.

Range Mental Health Center, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed July 7, 2014
Affirmed
Larkin, Judge**

Department of Employment and Economic Development
File No. 31112475-3

Tamara S. Jamnick, Mountain Iron, Minnesota (pro se relator)

Range Mental Health Center, Inc., Virginia, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

In this certiorari appeal, relator challenges an unemployment-law judge's (ULJ) determination that she is ineligible for unemployment benefits. Relator claims that she is eligible for benefits because she quit her employment based on a good reason caused by her employer. She also challenges the ULJ's refusal to issue a subpoena for documents from her employer and contends that her employer gave false testimony. We affirm.

## FACTS

Relator Tamara S. Jamnick worked for respondent Range Mental Health Center Inc. as a human-service technician from July 2008 to April 2013. Jamnick provided in-home support for adults with disabilities. Range operated three homes: two in Virginia and one in Hibbing. In the fall of 2012, Jamnick learned that one of the Virginia homes would close the following spring. Jamnick does not drive and was concerned that she would be expected to work at the Hibbing location. In her four years with Range, Jamnick had only been assigned one shift at the Hibbing location, and she traded that shift with another employee.

In the spring of 2013, Range notified Jamnick that she would be placed "on call" after the Virginia home closed, which meant that she would not be guaranteed a specific number of hours per week. Jamnick submitted a letter of resignation on March 20, 2013, because (1) she assumed that she would be laid off after the Virginia home closed, (2) she thought it would be easier on Range if she resigned instead of waiting to be laid off, and (3) she did not have transportation to the Hibbing location. When Jamnick tendered her

resignation, she had not yet transitioned to on-call status and the Virginia home had not closed. Jamnick intended to work until April 10, but Range discharged Jamnick on April 2.

Jamnick established an unemployment-benefits account with respondent Department of Employment and Economic Development (DEED). DEED determined that Jamnick was ineligible for unemployment benefits because she quit her employment without a good reason caused by the employer. Jamnick appealed that determination, and a ULJ held a de novo evidentiary hearing. The ULJ determined that Jamnick quit her employment without a good reason caused by the employer and is therefore ineligible to receive unemployment benefits. Jamnick requested reconsideration, and the ULJ affirmed her decision. This certiorari appeal follows.

## D E C I S I O N

On certiorari review, this court may reverse or modify a ULJ's decision

> if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious.

Minn. Stat. § 268.105, subd. 7(d) (2012).

An applicant who quits employment is ineligible for unemployment benefits, subject to certain exceptions. Minn. Stat. § 268.095, subd. 1 (2012). One such exception is if "the applicant quit the employment because of a good reason caused by the

3

employer." *Id*., subd. 1(1). A good reason to quit caused by an employer "is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id*., subd. 3(a) (2012). "Notification of discharge in the future, including a layoff because of lack of work, is not considered a good reason caused by the employer for quitting." *Id*., subd. 3(e) (2012).

An employee's reason for quitting employment is an issue of fact for the ULJ. *See Embaby v. Dep't of Jobs & Training*, 397 N.W.2d 609, 611 (Minn. App. 1986) (stating that "the reason for an employee's separation [from employment] is a factual determination"). But whether that reason constitutes "a good reason caused by the employer" is a legal question, which this court reviews de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000).

## I.

Jamnick argues that she quit based on a good reason caused by her employer because (1) Range changed her status to on call, which caused her to believe that she would not "get any shifts" and (2) she would have had to pay for a cab ride to Hibbing if Range assigned her shifts at that location. But when Jamnick resigned, she had not yet transitioned to on-call status and she did not know when the transition would occur. Thus, Jamnick's contention that she quit because she was placed on call and would not receive any shifts is unavailing. And although "[g]enerally, a substantial pay reduction gives an employee good cause for quitting," *Thao v. Command Ctr., Inc.*, 824 N.W.2d 1,

4

5 (Minn. App. 2012) (quotation omitted), any reduction in Jamnick's hours and associated compensation was speculative when Jamnick quit.

Jamnick's concern regarding increased commuting expenses was also speculative because when Jamnick quit, the Virginia home had not closed and she had not been assigned any future shifts at the Hibbing location. Moreover, "transportation is usually considered the problem of the employee, in the absence of evidence to the contrary." *Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 844 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Aug. 10, 2010).

In sum, because Jamnick's reasons for quitting were based on speculation, they would not compel an average, reasonable worker to quit and become unemployed rather than remain in the employment. The ULJ therefore correctly determined that Jamnick did not quit her employment because of a good reason caused by Range.

## II.

Jamnick also challenges the ULJ's denial of her request to subpoena "the staff schedule" for March, April, and May 2013 to show that "being on-call means no scheduled shifts" and that "other employees had [therefore] quit." "[W]hether to issue a subpoena . . . is within a ULJ's sound discretion and we will not reverse the decision absent an abuse of discretion." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 853 (Minn. App. 2014), *pet. for review filed* (Minn. May 29, 2014).

At the time of the hearing, the ULJ had "authority to . . . issue subpoenas to compel the attendance of witnesses and the production of documents and other personal property considered necessary as evidence in connection with the subject matter of an

5

evidentiary hearing." 2014 Minn. Laws ch. 251, art. 2, § 25(a) (repealing Minn. Stat. § 268.105, subd. 4 (2012)). "A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." Minn. R. 3310.2914, subp. 1.

The ULJ denied Jamnick's subpoena request because "none of the information requested would change the decision." We agree. It is irrelevant whether other employees were scheduled to work or had quit their employment at Range. The relevant inquiry concerns the work that was available to Jamnick at Range when she quit. And "the testimony . . . was clear" that Jamnick "still had shifts scheduled at the time that she quit." Because the requested documents would have been irrelevant or immaterial, the ULJ did not abuse her discretion by denying Jamnick's subpoena request.

**III.**

Lastly, Jamnick argues that Range provided "false testimony" by stating that her last day of work was April 10. Jamnick contends that her last day of work was April 2. But to prevail on certiorari review, a relator must show her substantial rights were prejudiced. *See* Minn. Stat. § 268.105, subd. 7(d). Jamnick was not prejudiced by her employer's alleged false testimony because the ULJ found that her last day of work was April 2.

Moreover, regardless of Range's testimony regarding Jamnick's last day, the ULJ correctly determined the dates of Jamnick's discharge and quit under statute. *See* Minn. Stat. § 268.095, subd. 5(b) (2012) (stating that if an employee is discharged "within 30 calendar days before the intended date of quitting, then, as of the intended date of

6

quitting, the separation from employment is considered a quit from employment"). Jamnick intended to work until April 10, but Range discharged her on April 2. Thus, Jamnick quit on April 10, and the period between April 2 and April 10 is considered a discharge. *See id.* In sum, even if the challenged testimony was false, Jamnick was not prejudiced by the testimony and it therefore does not provide a basis for reversal.

**Affirmed.**