*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2142**

Angela Watson,
Relator,

vs.

St. Stephen's Human Services, Inc.,
Respondent,

Department of Employment and
Economic Development,
Respondent

**Filed August 3, 2015
Affirmed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32856325-3

Angela Watson, Columbia Heights, Minnesota (pro se relator)

St. Stephen's Human Services, Minneapolis, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Angela Watson challenges an unemployment-law judge's determination that she is ineligible for unemployment benefits. She claims that (1) it was medically necessary for her to quit, (2) she was subject to adverse work conditions that her employer did not correct, and (3) she should have been afforded the opportunity to present additional evidence. Because quitting was not medically necessary, any adverse work conditions did not justify quitting, and Watson had an opportunity to present evidence, we affirm.

## FACTS

In 2007, Watson began working for respondent St. Stephen's Human Services, Inc. as a shelter advocate. Transitional changes at St. Stephen's caused Watson to become stressed, and she struggled with insomnia, heart palpitations, and difficulty focusing. Despite these issues, Watson liked working at St. Stephen's.

In August 2014, Watson suffered a panic attack and went to the emergency room. Emergency-room personnel told Watson that panic attacks are common for people in her line of work, gave her medication, and told her to follow up with a medical professional.

The next day, Watson met with St. Stephen's human-resources director and gave the director information about her health. During this meeting, Watson decided that she should leave St. Stephen's, and the director agreed that her decision was for the best. Watson's employment ended on September 2, 2014.

On September 18, the Minnesota Department of Employment and Economic Development (the department) determined that Watson was ineligible for unemployment benefits, finding that Watson's health problems did not require her to quit. Watson appealed this determination.

After a hearing, the unemployment-law judge denied Watson benefits. He found that Watson quit her employment and that no exception allowed Watson to receive benefits. Watson requested reconsideration, and the unemployment-law judge affirmed his decision. Watson appealed by a writ of certiorari.

## D E C I S I O N

The purpose of the Minnesota Unemployment Insurance Program is to assist those who become unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). Chapter 268 is remedial in nature and must be applied in favor of awarding unemployment benefits. Minn. Stat. § 268.031, subd. 2 (2014). Any provision precluding an applicant from benefits must be narrowly construed. *Id.*

On review, we may affirm the decision of an unemployment-law judge or remand the case for further proceedings; we may also reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision is affected by an error of law or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (2014).

We view an unemployment-law judge's factual findings in the light most favorable to the decision, and the findings will not be disturbed if the evidence substantially sustains them. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.

3

App. 2006). But whether an employee who quits falls within an exception making her eligible for unemployment benefits is a question of law reviewed de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000).

## I.    Medically Necessary

Watson first argues that the unemployment-law judge erred by determining that it was not medically necessary for her to quit. We disagree.

Minnesota law provides that an applicant who quits her employment is ineligible for unemployment benefits unless an exception applies. Minn. Stat. § 268.095, subd. 1 (2014). One exception to this general rule is that an applicant may receive unemployment benefits if "the applicant's serious illness or injury made it medically necessary that the applicant quit." *Id.*, subd. 1(7). But this exception applies only "if the applicant informs the employer of the medical problem and requests accommodation and no reasonable accommodation is made available." *Id.*

Here, the unemployment-law judge found that quitting was not medically necessary. He found that Watson had a panic attack and was treated, suffered from insomnia and heart issues, and was advised that she worked in a high-stress occupation. But she was never told that quitting was medically necessary. He also found that Watson quit before getting any follow-up treatment or medical guidance.

The unemployment-law judge's findings are supported by substantial record evidence, and Watson does not contend that the factual findings are incorrect. These findings support a conclusion that Watson is ineligible for unemployment benefits.

To obtain unemployment benefits, Watson's illness or injury must have made it medically necessary that she quit. *See id.* No evidence suggests that she was informed at the hospital that her condition required her to leave her employment. Instead, emergency room personnel instructed her to seek follow-up treatment. And rather than wait to make her decision until after this follow-up treatment, Watson decided to leave St. Stephen's the next day. While Watson's condition may have been serious, no evidence exists to demonstrate that the condition made it medically necessary for her to leave her employment.

Although we are sympathetic to the stress that Watson no doubt experienced in this difficult occupation, we nevertheless conclude that the unemployment-law judge did not err by concluding that Watson did not need to quit because it was medically necessary.

## II. Good Reason Caused by Employer

Watson next argues that she is eligible for unemployment benefits as she quit because of a good reason caused by her employer. This argument is also without merit.

An applicant may receive unemployment benefits if the applicant quit because of "a good reason caused by the employer . . . ." *Id.*, subd. 1(1). "Good reason caused by the employer" is defined as "a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014). In this context, to "compel is '[t]o cause or bring about by force, threats, or overwhelming pressure.'" *Werner v. Med.*

5

*Prof'ls*, 782 N.W.2d 840, 842 (Minn. App. 2010) (alteration in original) (quoting *Black's Law Dictionary* 321 (9th ed. 2009)), *review denied* (Minn. Aug. 10, 2010). This analysis must be applied to the specific facts of each case. Minn. Stat. § 268.095, subd. 3(b) (2014).

"If an applicant was subjected to adverse working conditions by the employer, the applicant must complain to the employer and give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014). Whether an employee had a good reason to quit caused by the employer is a question of law reviewed de novo. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012). "While an employee may have a good personal reason for quitting, it does not necessarily constitute a good reason caused by the employer for quitting." *Werner*, 782 N.W.2d at 842.

The unemployment-law judge found that Watson was stressed from conditions at work because of the nature of the job and some organizational changes. He also found that she liked her job and the people with whom she worked and that she did not understand how work aggravated her medical issues. He determined that the evidence did not support a conclusion that the conditions would compel an average, reasonable worker to quit.

The threshold for considering stress a good reason to quit caused by the employer is high. "Good reason to quit caused by the employer" does not encompass situations "where the employee is simply frustrated or dissatisfied with [her] working conditions." *Portz v. Pipestone Skelgas*, 397 N.W.2d 12, 14 (Minn. App. 1986). In *Zepp v. Arthur*

6

*Treacher Fish and Chips*, the supreme court found good reason to quit caused by the employer where the employee's work hours more than doubled and "the employer made unreasonable demands of [the] employee that no one person could be expected to meet." 272 N.W.2d 262, 263 (Minn. 1978). Similarly, in *Porrazzo v. Nabisco, Inc.*, we concluded that the employee had good reason to quit where the employee's hours substantially increased, he was assigned responsibility for two of the three work shifts, not all of his overtime hours were paid, his vacation requests were denied, and he was subjected to a harassing, unworkable relationship with his supervisor. 360 N.W.2d 662, 663-64 (Minn. App. 1985).

Here, the unemployment-law judge denied benefits because he concluded that the stress at St. Stephen's would not compel a reasonable person to quit her employment. This conclusion is correct. Although some evidence showed that structural changes at work caused Watson stress, nothing suggests that her increased workload escalated to the levels found in *Zepp* or *Porrazzo* such that a reasonable person would leave. Nor does any evidence show that the pressure on Watson was overwhelming so as to compel her to quit. *See Werner*, 782 N.W.2d at 842.

Watson's testimony focused more on the stressful nature of her job rather than stress because of increased responsibilities. And the stressful nature of a job cannot meet this statutory quit exception: it must be stress for which the employer is responsible. *See* Minn. Stat. § 268.095, subd. 3(a). No authority supports the proposition that an employer is responsible for stress caused by employment that is inherently stressful.

7

On this point, Watson also notes that St. Stephen's did not contest her receiving unemployment benefits. But agreements between applicants and employers regarding unemployment benefits are not binding on the determination of eligibility for benefits. Minn. Stat. § 268.069, subd. 2 (2014). An agreement between an applicant and an employer cannot establish an applicant's eligibility for benefits. *Scheeler v. Sartell Water Controls, Inc.*, 730 N.W.2d 285, 288 (Minn. App. 2007). This argument fails.

## III. Additional Evidence

Watson finally argues that the decision must be reversed because she was not permitted to submit additional evidence to support her claim. We are unpersuaded by this contention.

Minnesota law provides that on a request for reconsideration, an unemployment-law judge may not consider any additional evidence except to determine whether an additional hearing is necessary. Minn. Stat. § 268.105, subd. 2(c) (2014). An additional hearing must be ordered if a party shows that previously unsubmitted evidence would likely change the outcome and good cause existed for not submitting the evidence. *Id.* An additional hearing must also be ordered if a party shows that unsubmitted evidence would demonstrate that evidence admitted at the hearing is likely false and that false evidence had an effect on the outcome. *Id.*

Here, the unemployment-law judge informed Watson that the hearing was her opportunity to present evidence. When asked if she had more information that she wanted to present, Watson offered no evidence. After reviewing the exhibits with the unemployment-law judge, Watson said that "you guys have everything, yes."

Watson claims that, had she been permitted to submit additional evidence in her request for reconsideration, the unemployment-law judge would have ordered an additional hearing. But in her request for reconsideration, Watson did not say that the decision should be reconsidered because of additional evidence, she simply stated that she "d[id] not agree with the decision." Watson was not barred from submitting evidence to show that an additional hearing was necessary, but she did not do so. Because the unemployment-law judge gave Watson the opportunity to present evidence, this claim does not have merit. *See Lawrence v. Ratzlaff Motor Express Inc.*, 785 N.W.2d 819, 824 (Minn. App. 2010) (holding that the unemployment-law judge adequately developed the record where the parties had "ample opportunity" to present evidence), *review denied* (Minn. Sept. 29, 2010).

**Affirmed.**

9