*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0336

Patti L. Davies,
Relator,

vs.

Donaldson Company, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed November 7, 2016**
**Affirmed**
**Hooten, Judge**

Department of Employment and Economic Development
File No. 34000036-2

Patti L. Davies, Richfield, Minnesota (pro se relator)

Donaldson Company, Inc., Nashville, Tennessee (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Bratvold, Presiding Judge; Peterson, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

In this unemployment compensation appeal, relator challenges the decision of an unemployment law judge (ULJ) that she is ineligible for unemployment benefits. Relator contends that the ULJ's finding that she quit her employment is not supported by substantial evidence because she was constructively discharged from her position and, alternatively, respondent-employer's failure to adequately train her constituted good cause for her to quit. We affirm.

## FACTS

Relator Patti L. Davies began working for respondent Donaldson Company, Inc., as an accounting clerk on August 24, 2015. Prior to beginning work, Davies was told that she would be trained by a contract employee, but that employee left Donaldson before Davies began her employment. Davies expected that she would receive one-on-one training, but her one-on-one training was limited. Instead, Davies' training primarily consisted of reading manuals. During her employment, Davies and her supervisor set up a number of meetings where Davies was able to ask her supervisor questions about the processes used by Donaldson. Davies believed that her relationship with her supervisor was "strained" because her supervisor thought she would be learning the skills necessary for her employment more quickly.

Davies met with her supervisor on October 14, 2015. At the meeting, the supervisor noted concerns with Davies' performance, but did not state that she would be discharged. The supervisor asked Davies how she felt her employment was going and what she thought

2

the next step should be. Davies indicated that she would end her employment on October 16, 2015.

Davies subsequently sought unemployment benefits, and respondent Minnesota Department of Employment and Economic Development made an initial determination that Davies was eligible for benefits. Donaldson filed an administrative appeal, and a ULJ conducted a de novo hearing. The ULJ found that Davies quit her employment. Noting that an applicant who quits her employment is ineligible for benefits unless she satisfies one of the exceptions enumerated in Minn. Stat. § 268.095, subd. 1 (2014), and that Davies did not satisfy any of the exceptions, the ULJ concluded that Davies was not eligible for benefits. Davies requested reconsideration of the ULJ's decision, and the ULJ affirmed his decision. This certiorari appeal followed.

**D E C I S I O N**

This court may remand, reverse, or modify a ULJ's decision denying unemployment benefits when the ULJ's findings, inferences, conclusion, or decision are affected by an error of law, unsupported by substantial evidence, or arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). We view the ULJ's factual findings in the light most favorable to the decision and will not disturb the findings "when the evidence substantially sustains them." *Skarhus v. Davanni's, Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Substantial evidence is (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety."

3

*Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quotation omitted).

We defer to the ULJ's credibility determinations. *Skarhus*, 721 N.W.2d at 344.

## I.    The ULJ's finding that Davies quit her employment is supported by substantial evidence.

Davies challenges the ULJ's finding that she quit her employment. An applicant for unemployment benefits who quits her job is ineligible for benefits unless the quit falls within one of the statutory exceptions. Minn. Stat. § 268.095, subd. 1. "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). "Whether an employee has been discharged or voluntarily quit is a question of fact subject to our deference." *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012).

There is substantial evidence in the record to support the ULJ's factual finding that Davies quit. Both Davies and her supervisor testified that Davies could have worked past October 16. The supervisor testified that when she asked Davies what she thought the next step should be, Davies replied, "I think I should be done," and requested that her last day of employment be October 16.

Davies argues, however, that she was constructively discharged from her employment because she "was compelled to resign by the actions and inactions of Donaldson."[1] Constructive discharge is a common law legal concept that applies "where

---

[1] We note that the legislature recently amended the definition of "discharge" provided by Minn. Stat. § 268.095, subd. 5, by adding a provision stating that "[w]hen determining if an applicant was discharged, the theory of constructive discharge does not apply." 2016 Minn. Laws ch. 189, art. 9, § 7, at 1030–31. As neither party argues that the amendment applies retroactively to unemployment compensation cases that were pending at the time

4

an employee resigns in order to escape intolerable working conditions." *Huyen v. Driscoll*, 479 N.W.2d 76, 81 (Minn. App. 1991), *review denied* (Minn. Feb. 10, 1992).

However, Minnesota law provides that "[t]here is no equitable or common law denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3 (2014). Moreover, Minnesota law provides that "[a] discharge from employment occurs when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." Minn. Stat. § 268.095, subd. 5(a) (2014). While it is clear that Donaldson had concerns regarding Davies' progress in training, the record supports the ULJ's determination that Donaldson's communication of these concerns was not sufficient to lead a reasonable employee to believe that Donaldson would no longer allow her to continue working there in any capacity.

II.     **The ULJ did not err in determining that Davies did not have a good reason to quit her employment caused by the employer.**

Davies argues that even if she quit her employment, the ULJ erred in concluding that she did not quit for a good reason caused by Donaldson. The ULJ determined, and Davies appears to agree, that only one of the exceptions enumerated in Minn. Stat. § 268.095, subd. 1, the good reason exception, potentially applies to this case. An applicant who "quit the employment because of a good reason caused by the employer" may be eligible for unemployment benefits. *Id.*, subd. 1(1).

A good reason caused by the employer for quitting is a reason:

of the statute's enactment, we do not address that question and apply the statutory definition of "discharge" as it read prior to the amendment.

5

(1) that is directly related to the employment and for which the employer is responsible;
(2) that is adverse to the worker; and
(3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

*Id.*, subd. 3(a) (2014). The third element requires that the employee was compelled to quit by "extraneous and necessitous circumstances" and sets an objective standard of reasonableness. *Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 843 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Aug. 10, 2010). The statute further provides that an employee experiencing adverse working conditions must complain to the employer and "give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014). "Whether an employee had good cause to quit is a question of law, which we review de novo." *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012).

Davies argues that the inadequate training that she received, which caused her to struggle to perform her duties, constituted a good reason to quit her employment. An employee's frustration or dissatisfaction with her working conditions does not constitute good reason to quit caused by the employer. *Portz v. Pipestone Skelgas*, 397 N.W.2d 12, 14 (Minn. App. 1986). And, receiving less training than desired, at least under the circumstances of this case, would not compel an average, reasonable worker to quit and become unemployed rather than remaining employed. *See Werner*, 782 N.W.2d at 843

6

("To compel is to cause or bring about by force, threats, or overwhelming pressure." (alteration omitted) (quotation omitted)).

Davies contends that Donaldson continued to assign her job duties beyond her initial responsibilities, even though she continued to struggle with her initial responsibilities because she was never provided adequate training, and that this constituted a good reason to quit. In some circumstances, an applicant who quit because her employer altered the expectations of job performance may be eligible for unemployment benefits under the good reason to quit exception. In *Zepp v. Arthur Treacher Fish & Chips, Inc.*, the Minnesota Supreme Court reversed an ineligibility determination where the employee's required work hours doubled over a two-year period and "the employer made unreasonable demands of [the] employee that no one person could be expected to meet." 272 N.W.2d 262, 263 (Minn. 1978). In *Porrazzo v. Nabisco, Inc.*, this court reversed an ineligibility determination where the employee's work hours increased substantially, he was held responsible for two shifts, not all of his overtime hours were paid, his vacation requests were denied, and he was subject to criticism and harassment from his supervisor. 360 N.W.2d 662, 663 (Minn. App. 1985).

Davies does not argue that the additional job duties were unreasonable or beyond the scope of the duties that she had been hired to perform. Rather, Davies argues that the assignment of additional duties when she had not yet been able to master her initial responsibilities because of inadequate training constitutes a good reason to quit her employment. Although evidence in the record shows that Davies was assigned new duties as part of her employment with Donaldson, nothing suggests that her increased workload

7

escalated to the levels found in *Zepp* or *Porrazzo* such that a reasonable person would quit rather than continue the employment. Nor does anything in the record suggest that the assignment of additional duties was anything other than an expected progression in increasing Davies' duties consistent with the position she was hired to perform.

Additionally, at the October 14th meeting with her supervisor regarding her slow progress in training, Davies was questioned by her supervisor as to what the next step should be. Rather than communicating any request for additional training or otherwise allowing Donaldson to take steps to assist her in improving her progress, Davies simply responded that she "should be done" and that her last day of employment was October 16. Under these circumstances, we conclude that the ULJ did not err in concluding that Davies quit without good cause attributable to Donaldson.

**Affirmed.**